# James Dick *et al. v.* John Grissom *et al.*

Although, as a general rule, the father is entitled to the services and earnings of his children during their minority, resulting from his obligation to support them, this is a privilege which the father may waive at his pleasure, or which may be extinguished by operation of law.

Where there is evidence of any distinct act of emancipation on the part of the father—as by sending a son forth to shift for himself—neither he nor his creditors will be permitted to assert any right to the subsequent earnings of the child so emancipated.

A conveyance by a father (who was largely indebted at the time,) to a minor son, in consideration of past services of the son, for which the father had agreed to compensate him, cannot be sustained against the creditors of the father. The conveyance would be binding as between the father and son, but would be regarded as purely voluntary as against the creditors of the father.

Where the son during his minority was a married man, and continued in the service of his father subsequent to such marriage ; held, that this, of itself, was a legal emancipation, and entitled the son to the proceeds of his labor independent of any act of emancipation on the part of the father. A *bona fide* contract made by the father with his son, under such circumstances, would be good against the other creditors of the father.

A married man, although a minor, has control over his own actions, and is entitled to apply the proceeds of his labor to the support of his family.

A minor son worked for his father four or five years after his marriage, with the verbal understanding that he was "on wages ;" but there was no agreement as to the amount of wages to be paid, nor was there any settlement between them until the father became embarrassed, hard pressed by his creditors, and was on the verge of bankruptcy ; a settlement then took place, and a balance struck in favor of the son' for four thousand five hundred dollars, and the father conveyed to the son a tract of land, valued at eight thousand dollars, in payment of his services; the father and son continued to occupy the land jointly; the title of the father to the land, and the conveyance to the son, were both registered at the same time. After the conveyance to the son, the father conveyed the same land in trust to indemnify a person who was his surety upon the very claims which the complainants in this bill were seeking to enforce ; held, that these circumstances were evidence of fraud, notwithstanding the general denial of fraud by the defendants, in their answer; that the conveyance from the father to the son was therefore void, and the property subject to the judgment creditors of the father.

The history of this case will sufficiently appear from the briefs of counsel and the opinion of the chancellor.

WILKINSON and MILES for complainants.

This bill is filed for the purpose of setting aside a deed as fraudulent, made by defendant, John Grissom, to William Grissom.

The answers of defendants deny all fraud, and it remains for this court to say, whether, under the circumstances developed in the progress of this cause, it will not adjudge the deed fraudulent, notwithstanding the general denial contained in the answer. That "fraud will never be presumed," we know to be a cherished maxim of the law. But at the same time, we respectfully insist, that if upon the facts as they appear by the pleadings and proof, a fraudulent intent is manifested, it is the duty of a court of equity to declare the deed void for fraud. 1 John. Ch. R. 481–487; 2 John. Ch. R. 297–304; 2 John. Ch. R. 43–48; 18 John. Rep. 426; 1 Day's Conn. Rep. 295.

From exhibits C. and D. to the bill, it appears that the deed from Bland to John Grissom, and the deed from John to William Grissom, were both filed for record on the same day, and were ex·ecuted within a few days of each other. The rapidity with which these conveyances were made, especially when it is considered that they were made by a father to his son, the father being insolvent, and that fact known to the son, furnishes controlling evidence of a fraudulent intent. It is to this extent, and in this sense, that the remark of Lord Hardwick is to be understood, when he said, "fraud may be presumed from the circumstances and condition of the parties contracting." Chesterfield *v.* Jansevar, 2 Vesey, 255–6. See, also, 18 Vesey, 483.

The consideration disclosed by the answer is not sufficient to support the deed. It seems that three thousand nine hundred dollars, of the eight thousand dollars agreed to be given for the land, was allowed as a credit to William Grissom for services he had rendered his father as overseer. The proof in the cause shows, that during all that time, except one year, William Grissom was a minor. It need not be argued that the father was entitled to the services of his son, until he arrived at maturity. How then

*James Dick et al. v. John Grissom et al.*

can a fund, which in law belonged to John Grissom, be set up as a consideration to support a deed from John to William Grissom? William certainly could not have recovered by law the amount of his services from his father.   Will this court, then, sanction the fraudulent appropriation of a fund, in law belonging to John Grissom, and which by law should go in payment of his debts, and make that very appropriation the means of postponing and defeating the creditors of John Grissom?

Besides, the answer shows an abandonment of the original contract between John and William Grissom.   It seems that the apprehension of a levy and sale induced the father and son to cancel the contract; an agreement being entered into that the son should still retain a *pro rata* interest in the land, to be determined by the extent of his payment.   Now it is contended, that whatever may be the force and effect of such an agreement, as between the Grissoms, it has no binding efficacy as against the creditors of John Grissom.   As to them, it amounts to a rescission of the contract, and they are entitled to go against the land.

Again.   The deed purports to have been executed by John to William Grissom, in consideration of the sum of eight thousand dollars, paid in hand.   It is now attempted to sustain the deed by proving a distinct and different consideration.   This cannot be done.   2 John. Ch. R. 42, 43. and cases there cited.   The same point was expressly decided by this court at the last January term, in the case of D. G. and R. Moore *v.* Enoch King *et al.*

G. S. YERGER and R. S. HOLT for respondents.

The complainants allege that they are judgment creditors of the defendant, John Grissom; that, before the rendition of their judgments, John Grissom, by deed, conveyed a tract of land to his co-defendant, William Grissom, who is his son; that said deed from John to William Grissom was made with intent to delay, hinder and defraud the creditors of said John; that, though said deed recites that it was made in consideration of eight thousand dollars paid to the grantor, nothing was or has been paid or secured, and that said conveyance was intended as a cloak to protect said land from the creditors of said John Grissom.

The defendants generally and particularly deny the charges of fraud contained in the bill, and distinctly negative every circum-

stance alleged by complainants as indicative of fraud in said conveyance.

They say that said land was in good faith purchased by said William from said John, at the price of eight thousand dollars; that, on a settlement between them, at the time of said sale, said John Grissom was found to be indebted to said William in the sum of thirty-seven hundred dollars, for services rendered him by said William as overseer, and for the hire of two negroes of said William; and in the further sum of six hundred dollars, the amount of a note made by said John Grissom, payable to one Miles, who had transferred it to said William Grissom; that these sums were, in said sale, treated as cash paid by said William to said John; that the remainder of said sum, or thirty-five hundred dollars, was secured by the note of said William, payable to said John Grissom; that, subsequently, they agreed that this note should be cancelled and given up, and that said William should abandon all claim of title to a pro rata portion of said land; that, with this modification, said sale, made in good faith, is still valid, and the title to said land still in said William Grissom.

That the land in controversy is subject to the judgments of complainants, to the extent of the interest of John Grissom under the modification of the contract of sale, is not denied; but beyond this every vestige of complainants' equity is swept away by the answer. Every circumstance of fraud charged in the bill is distinctly and directly denied by the answer; and as it is a maxim of universal application in this court, that, when fraud has been thus denied, it must be fully proven by the party alleging it, the defendants might have rested their case here with safety. But, to dissipate every doubt, they have taken the deposition of Mr. Briscoe. By him it is proven that said William was "in the employment of said John some four or five years;" "that he was on wages as overseer of said John;" that his services were worth from five to eight hundred dollars per year; that said John had in his employment a negro of said William, during all this time, worth one hundred dollars per year; that the wages of said William were not paid him as witness believes.

This testimony proves conclusively that the deed from John to William Grissom was founded on a valuable consideration, and

one entirely sufficient in law to sustain it, unless the intent of John Grissom was fraudulent, and known to be so by his vendee. There is no proof, either direct or circumstantial, indicating such an intent on the part of the grantor, or such notice on the part of the grantee. On the contrary, the magnitude of the price to be paid, the execution of the note for the balance, which rendered it liable to attachment in the hands of William Grissom, his abandonment of a ratable proportion of the land when they agreed to cancel the note, are all circumstances showing that the transaction was one of an ordinary and legitimate character, and in which each of the contracting parties looked alone to the advancement, by honest means, of his legitimate interests.

But complainants will insist on another point. Annexed to the deposition is an admission on the part of the defendants, that during the three first years of the time during which William Grissom served his father as overseer, he was a minor, but that during the whole of that time he was a married man, and had been discharged by his father from all obligation to serve him, and from all claim of his father upon the proceeds of his labor. This qualified agreement is read by written agreement of solicitors.

It will be urged that as the father was, during the minority of his son, entitled to his services, the consideration of the deed thus far fails. It is an unquestionable proposition of law that a father is entitled to the services of his infant child. But it is an equally undeniable proposition that the father may waive or release this right and emancipate his child; and that he has done so may be proven by circumstances, as well as direct evidence. 5 Wendell, 204; 7 Cowen, 92; 8 Ib. 84; 2 Mass. 115; 9 Cowen, 279; 2 Pick. 201; 12 Pick. 113; 7 Wend. 354; 2 Kent, 192–3.

The books on this subject speak but one language. It is a part of the admission of fact, indeed, in this case, that there had been, before the contract between the father and son occurred, the most full and complete acquittal and release of all claim on the part of the former to the services of the latter. Even in the absence of this proof, however, the facts that the father employed the son "to serve him as overseer;" that he was "with his father on wages," as proved by Mr. Briscoe; that he was a married man, are all in-

James Dick *et al. v.* John Grissom.

consistent with any other hypothesis than that the father had released and abandoned his parental rights.

The complainants failing to impeach the sale of land, show no title to any relief whatever in this court. The interest of John Grissom in this land is subject to sale at law. There is no obstacle in the way of a levy and sale under execution on the judgments at law. The bill should therefore be dismissed.

THE CHANCELLOR.

The complainants, as judgment creditors of the defendant John Grissom, seek to set aside a previous conveyance of land made by him to his co-defendant, William Grissom, who is his son. They allege that such conveyance was made to defraud creditors, and that no consideration whatever was paid or secured to be paid therefor. The defendants have put in a joint answer, in which they deny all fraud, and state that the land was sold in good faith, for the consideration of eight thousand dollars; that this consideration was made up in part by a claim of thirty-nine hundred dollars, which, upon a settlement between them, was found due by the father to the son, for services rendered by the latter in the character of an overseer, and for the hire of two negro women; that the son held a note on the father for six hundred dollars, which had been transferred to him by some third person,—that these two sums were considered as cash paid; and that the remainder was received in a promissory note of the son to the father for three thousand five hundred dollars. There is no proof whatever of the existence of the note of which the son is said to have been the holder, nor of the pretended hire of negroes. The witness says that the son had a negro woman, whose services were worth one hundred dollars a year, but does not state that the father hired her, or that she was in his service. The counsel for the complainants insist, so far as the consideration of the deed rests upon services rendered to the father by the son during his minority, that it is wholly insufficient as against the creditors of the former. Although as a general rule the father is entitled to the services and earnings of his children, resulting from his obligation to support them, yet this is a privilege which the father may waive at his pleasure, or which may be extinguished by operation of law. Such waiver may result from

James Dick *et al. v.* John Grissom *et al.*

an express agreement to that effect, on the part of the father, or may be implied, from the fact that the conduct of the father went to recognize the minor child as a person *sui juris.* And where there is evidence of any distinct act of emancipation on the part of the father, as by sending a son forth to shift for himself, neither he nor his creditors will be permitted to assert any right to the subsequent earnings of the child so emancipated. Manchester *v.* Smith, 12 Pick. Rep. 113; Nightingale *v.* Withington, 15 Mass. Rep. 272; Burlingame *v.* Burlingame, 7 Cow. Rep. 93; Shute *v.* Dorr, 5. Wend. Rep. 206. These, however, were all cases where the minor had been permitted by the father to make contracts with third persons on his own account for compensation for his services. And I should much doubt whether a conveyance by a father who was largely indebted at the time to a minor son, in consideration of past services of the son, for which the father had agreed to compensate him, could be sustained against the creditors of the latter; for in general the law considers the child as the servant of the parent, and as laboring for him, and a promise by the father to pay for such services, although it might be binding on him, should, it seems to me, be regarded as purely voluntary as against his creditors. Brown *et al. v.* McDonald, 1 Hill's Chan. Rep. 306. Any other rule might lead to the practice of the grossest fraud upon creditors. It would only be necessary for a debtor of doubtful solvency, having a number of minor children, to make a contract with each, to pay him so much for his services; and then by way of payment, make a conveyance of his whole estate to them, and thus bid defiance to his other creditors. This would be a new mode of giving validity to family settlements. If William Grissom, while engaged in superintending the plantation of his father, during his minority, had no other claim to compensation than that growing out of a mere agreement with his father, I should hold that the conveyance to him so far as it depended upon such services, was void as against the creditors of the father. It is in evidence, however, that during the period of his services he was a married man; this was of itself a legal emancipation, and entitled him to the proceeds of his labor independent of any act of emancipation on the part of the father. If then the father contracted to pay him for such services he would be bound to do so, and other

creditors could not complain. When a man marries, he necessarily takes upon himself the care and support of his family; and it is essential to the very structure and independence of civil society, that he should, notwithstanding his minority, have control over his own actions, and be entitled to apply the proceeds of his labor to the support of his family; and so I understand the law to have been settled. 13 Mass. Rep. 469; Taunton *v.* Plymouth, 15 Mass. 194, 203; 7 Am. Com. Law, 180. The question then is, does the testimony establish *any* contract between the father and son, with reference to the labor of the latter. There is but one witness on the subject, who states that he knows the son acted as overseer for the father for "*some* four or five years," and that he understood from the father that the son "was on wages." When these services commenced or terminated, or what sum was to be paid therefor, is not stated. This testimony is very vague and unsatisfactory; and if the validity of the deed depended solely upon this feature of the case, I should be in doubt what judgment to pronounce.

There are, however, other features connected with the conveyance, which seem to me to stamp it so strongly with the impress of fraud as to leave no doubt about its true character. Among these are:

1. The fact that we find no reckoning between the father and son for the services of the latter, through a period of four or five years, nor until the former was greatly embarrassed with his debts, and on the very eve of total bankruptcy. That the father was largely indebted, and in failing circumstances, at the time of the alleged settlement and conveyance is admitted by the answer of both.

2. It also appears from the answer that the father has since continued to occupy the land, a part of the time in connection with his son, and afterwards under color of being his tenant. There is no contract in writing or other evidence adduced to show the existence or character of such tenancy. When the same was to commence, how long it was to continue and upon what terms, is left entirely unexplained by either the pleadings or proof.

3. The circumstance that the deed by which the father acquired title to the land in question was withheld from record until the

conveyance to the son was made, and then both presented for registration at the same time, would seem to indicate a purpose on the part of the father to conceal his property from the eye of his creditors.

4. It is shown that after the conveyance from the father to the son, the former made a conveyance of the same land in trust for the indemnity of a person who was his surety upon the very claims which the complainants are seeking to enforce. It is true that it is stated in the answer that the son knew nothing of this latter conveyance, but it is difficult under the circumstances to resist the opposite conclusion. The son was then living with the father, and it would seem probable that he was familiar with his business relations and transactions; and it is almost impossible to conceive of a father of such depravity and obliquity of moral principle as to cheat and defraud his own offspring; and yet such a conveyance was not only a fraud upon the person to whom it was made, if the claim of the son was valid, but equally a fraud upon the son himself, if made without his consent. To extricate the father from this dilemma, we must adopt one of two conclusions: (1) either that the conveyance to the son was merely colorable, and that the title was considered substantially in the father, or (2) that the son knew of and assented to such conveyance in trust, and intended to recognize its validity.

5. I think it can be demonstrated from the statements of the answer, that the parties themselves regarded the deed to William Grissom, the son, as a mere convenience, to be held valid or void as the interests of the father might suggest. Accordingly, we find that when the land was threatened with an execution under an older judgment, in favor of the Agricultural Bank, against the father, the answer states, that "apprehending a sale under said execution," the father agreed with the son to give up to him the note for three thousand five hundred dollars, upon the son agreeing to relinquish title to a portion of the land corresponding to the proportion which that sum bore to the whole consideration. But it is not pretended that a sale of any portion of the land was made under that judgment, or that any part of it was ever reconveyed to the father. On the contrary, the son still appears to be the owner of the entire tract of land, so far at least as the title deeds

James Dick *et al. v.* John Grissom *et al.*

go. It appears, then, that three thousand five hundred dollars of the consideration money was agreed to be considered as discharged, because of the apprehension that the land might be made liable for the debt of the father; but that in point of fact it was not so made liable, and that the son still holds the same, and at the same time stands discharged from the debt of three thousand five hundred dollars, without having paid a cent of it. This is a very unsatisfactory mode of establishing the fairness of the consideration of the deed in question.

The general denial in the answer of all fraud is not sufficient to purge the transaction of the suspicion which fastens upon it, by reason of the facts which are admitted. Fraud is a conclusion of law from facts and intentions, and although its existence is denied, if the admitted facts conduce to prove it, they must be held to outweigh the denial. Mulholland *v.* Hendrick, 1 Beat. R. 280 ; Hendricks *v.* Robinson, 2 John. Ch. R. 300; Brogden *v.* Walker, 2 Har. & John. 292 ; Cunningham *v.* Freeborn, 1 Edw. Ch. R. 256. I have sought with eager earnestness to ascertain the true character of this case, and upon the whole I am satisfied, from the facts and circumstances to which I have adverted, that the sale and conveyance from John to William Grissom, was merely colourable, and was intended to screen the property of the former against his creditors, who it seems were then pressing him to insolvency. I must accordingly declare the deed fraudulent and void as against creditors, and that the land be subjected to the complainants' judgment. Let a decree be prepared accordingly.